**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID MINCEY,

        Petitioner,

v.                              Case No. 3:20-cv-1421-TJC-MCR

FLORIDA COMMISSION ON
OFFENDER REVIEW,

        Respondent.

_____

## ORDER

### I. Status

Petitioner David Mincey, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. He also filed a Supplemental Petition. See Doc. 13. Petitioner challenges the Florida Commission on Offender Review's (Commission) 2017 revocation of Petitioner's conditional release. See Docs. 1, 13. The Commission filed a Response. See Doc. 15 (Resp.).[1] Petitioner replied (Docs. 19, 20, 28), and filed a notice of voluntary dismissal of Ground Three of

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

his Petition (Doc. 21). Thus, this case is ripe for review.[2]

## II. Procedural History

In 1995, a state trial court (Duval County, Florida) sentenced Petitioner as a Habitual Felony Offender to a thirty-year term incarceration for one count of robbery and a five-year term of incarceration for a second count of robbery. Resp. Ex. 4 at 171. Under section 947.1405, Florida Statutes, Petitioner was eligible for conditional release following the incarcerative portion of his sentence based on the accrual of gain time. Id. On March 24, 2011, Petitioner was released from the Florida Department of Corrections' custody and began his conditional release supervision pursuant to the Commission's order of conditional release. Id. at 173, 98-99. Petitioner's supervised released was set to end on March 9, 2024, and his conditions included a prohibition on possessing drugs and violating the law. Id. at 173, 200.

On April 3, 2017, based on information in a violation report from Petitioner's supervising officer and Petitioner's March 2017 arrest for

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

possession of cocaine, marijuana, and drug paraphernalia, the Commission issued a "Warrant for Retaking Conditional Releasee." Id. at 173. The warrant listed the following violations:

> Violated Condition 4(b) by using or possessing narcotics, or drugs, unless prescribed by a physician, in that on or about March 26, 2017, he did use and/or possess Marijuana, not prescribed by a physician.
>
> Violated Condition 7 by failing to obey all laws, ordinances and statutory conditions of Conditional Release, in that on or about March 26, 2017, in Duval County, Florida, he did unlawfully possess/constructively possess a controlled substance to wit: Cocaine.
>
> Violated Condition 7 by failing to obey all laws, ordinances and statutory conditions of Conditional Release, in that on or about March 26, 2017, in Duval County, Florida, he did unlawfully possess/constructively possess Marijuana, a controlled substance, not more than (20) grams.
>
> Violated Condition 7 by failing to obey all laws, ordinances and statutory conditions of Conditional Release, in that on or about March 26, 2017, in Duval County, Florida, he did unlawfully use or possess with intent to use drug paraphernalia, to prepare, test, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance.

Resp. Ex. 4 at 205. On April 4, 2017, the Commission provided Petitioner with written notice of the violations and notice of his right to attend the conditional release violation hearing; but Petitioner asked that the hearing be postponed until the disposition of the pending drug charges. Id. at 210-11. On May 1, 2017,

the state filed a notice advising it was declining to prosecute Petitioner for the new offenses. Id. at 213.

On May 8, 2017, the Commission again provided Petitioner with a written notice of the violations and his right to participate in the conditional release violation proceedings. Id. at 215-16. Petitioner requested to participate in the hearing and waived his right to be represented by an attorney during the proceedings. Id. at 216.

Petitioner's violation hearing was held on May 25, 2017. Id. at 218-23. At the hearing, Officer Morel, one of the March 2017 arresting officers, testified. Id. at 220. A summary of his testimony is included in the hearing officer's written "Summary of Final Violation Hearing," which states as follows:

> As to all the allegations, Officer Morel testified on March 26, 2017, he was responding to a battery call in which two black males next to a black truck were trying to beat up a white female. Officer Morel testified he observed the releasee seated in a black truck in the right front passenger seat as he approached the vehicle. As to the allegation 1 and allegation 3, Officer Morel testified that there was a clear glass jar of marijuana in plain site that he observed from outside the vehicle. Officer Morel testified the clear glass jar of marijuana was located in the front of the vehicle on the center console area of the vehicle within arm's reach of the releasee. Officer Morel then had all the occupants of the vehicle exit the vehicle and the releasee was the first one he patted down for officer safety. Officer Morel testified the releasee walked away from the vehicle and attempted to call someone to come pick him up so he could leave the area. Officer Morel testified he made contact with the releasee and brought the releasee back

4

to the vehicle. Officer Morel testified everyone in the vehicle knew the marijuana was in the vehicle.

As to allegation 2, Officer Morel testified that next to the marijuana on the center console of the vehicle was a brown tube which contained crack cocaine which was within arm's reach of the releasee while he was in the vehicle. Officer Morel testified the substance in the brown tube field tested presumptive positive for cocaine.

As to allegation 4, Officer Morel testified that he could not recall if the drug paraphernalia found in the vehicle was found in the right front door area or in the center console area but both areas were within arm's reach of the releasee as he was seated in the vehicle. In response to the releasee's cross examination of fleeing, Officer Morel testified that the releasee left the scene of a crime after being detained and the releasee tried to tell Officer Morel that he was not in the truck. Officer Morel further testified that he had to go around the corner 2 times to talk to the releasee after the releasee walked away from the vehicle.

Resp. Ex. 4 at 220.

Petitioner also testified at the hearing. Id. at 221. A summary of his

testimony is as follows:

The releasee testified he knew the person in the driver's seat and the driver stated to him that it was not his truck. The releasee testified that he never saw the drugs or the drug paraphernalia in the vehicle because it was dark and the vehicle did not have a cabin light that was operable. The releasee testified that the occupants of the vehicle never used any drugs in front of him. The releasee testified that he walked approximately 25 yards away from the vehicle after exiting because he was trying to charge his phone and call Uber for a ride. The releasee further testified that

he was not guilty of the violation.

Resp. Ex. 4 at 221.

Based on this evidence, the hearing officer recommended that the Commission find Petitioner guilty of all four of the alleged violations. Id. at 222. On July 26, 2017, the Commission accepted the hearing officer's findings of facts; found Petitioner willfully violated the conditions of his release by violating conditions 4(b), 7(1), 7(2), and 7(3); and revoked Petitioner's conditional release supervision. Id. at 231-34. In the revocation order, the Commission summarized the evidence relied on for each violation as follows:

> Condition 4(b): Finding of guilt based upon the testimony of Officer Morel of the Jacksonville Sheriff's Office, in that the releasee was in the right front passenger seat of the vehicle and [a] clear glass jar of marijuana was within arm's reach on the center [con]sole areas of the same vehicle on March 26, 2017.

> Condition 7(1): Finding of guilt based upon the testimony of Officer Morel of the Jacksonville Sheriff's Office, in that on March 26, 2017, the releasee was in the ri[ght] front passenger seat of the vehicle and the crack cocaine found on the center console area of the same vehicle was within arm's reach of the releasee.

> Condition 7(2): Finding of guilt based upon the testimony of Officer Morel of the Jacksonville Sheriff's Office, in that on March 26, 2017, the releasee was in the right fron[t] passenger seat of the vehicle and the marijuana observed in plain site on the center console area of the same vehicle was within arm's reach of the releasee.

> Condition 7(3): Finding of guilt based upon the

> testimony of Officer Morel of the Jacksonville Sheriff's
> Office, in that on March 26, 2017, the releasee was in
> the right front passenger seat of the vehicle and the
> drug paraphernalia found in the same vehicle was
> within arm's reach of the releasee.

Resp. Ex. 4 at 233.

Following the issuance of the revocation order, Petitioner filed with the state trial court a petition seeking habeas relief challenging the Commission's findings of guilt and the revocation of his supervised release.[3] Resp. Ex. 1, 2. The Commission responded, Resp. Ex. 4, and Petitioner replied, Resp. Ex. 5. The state trial court then summarily denied the petition. Resp. Ex. 6. Petitioner sought review of the trial court's order by filing an emergency petition for writ of certiorari with the First District Court of Appeal. Resp. Ex. 7. The Commission responded to the petition. Resp. Ex. 9. And the First DCA issued an order denying the petition "on the merits." Resp. Ex. 11.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure

---

[3] Petitioner titled the pleading as a "Petition for Writ of Mandamus," but the state trial court construed the filing as a petition for state habeas relief and transferred it to the state circuit court in and for Union County, Florida, which was located in the jurisdiction where Petitioner was incarcerated. Resp. Ex. 3.

that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## IV. The Petition

### a. Grounds Four and Six[4]

Petitioner argues that the Commission's revocation of his conditional release violated his due process rights because the revocation was not based on an objectively reasonable determination of the facts. Doc. 1 at 19; Doc. 13 at 12; Doc. 20 at 11. According to Petitioner, the written statement of evidence in the Commission's order of revocation was insufficient under Florida law to support a finding that Petitioner was in constructive possession of the alleged drugs and paraphernalia. Doc. 1 at 10.

Petitioner raised this issue in his state court habeas petition.[5] Resp. Ex. 1 at 31, 111. The Commission filed a response to the claim, arguing as follows:

> In his second claim, he asserts competent and substantial evidence does not support a finding of guilt of the violations. He also claims there was no evidence of dominion and control and exclusive control over the drugs and paraphernalia. He also claims that only hearsay was used to support the revocation.
>
> In his third claim, he asserts that no evidence supports that he willfully and substantially violated his

---

[4] In Ground Four, Petitioner challenges the sufficiency of the evidence the Commission relied on to revoke his conditional release, and in Ground Six, Petitioner challenges the state court's adjudication of his petition challenging the Commission's revocation. The Court begins its analysis by addressing Grounds Six and Four because the allegations supporting these claims provide context for Petitioner's claims in Grounds One, Two, and Five.

[5] In his Reply, Petitioner clarifies that in Grounds Four and Six, he is seeking review of his sufficiency of the evidence claim raised in his state court habeas petition. Doc. 19 at 8.

Conditional Release.

This violation proceeding concerned the issue of constructive possession. The facts in this case reflect that the police officers responded to the truck. Officer Morel testified he observed the Petitioner sitting in the front passenger seat and patted the Petitioner down, supporting that he was on the Petitioner's side of the vehicle. He further testified that he observed a clear jar containing marijuana in the center console within arm's reach of the Petitioner. He also testified that a brown tube containing crack cocaine was also within arm's reach of the Petitioner. He further testified that paraphernalia was within the reach of the Petitioner whether in the right front door area or the center console. Officer Morel testified as to his observations of what he observed as well as to the results of the testing of the drugs. An eyewitness statement constitutes direct evidence. Manuel v. State, 16 So. 3d 833, 834 (Fla. 1st DCA 2005); Vanstraten v. State, 901 So. 2d 391, 393 (Fla. 1st DCA 2005) ("'The testimony of a single witness, even if uncorroborated and contradicted . . . is sufficient to sustain a conviction,' or to support revocation of community control or probation." citing, I.R. v. State, 385 So. 2d 686, 688 (Fla. 3d DCA 1980); State v. Oueior, 191 So. 3d 388, 389 (Fla. 2016) (Observation of administered drug test results is direct testimony).

Proof of constructive possession is established when a defendant does not have physical possession of contraband but (1) knows it is within his presence, (2) has the ability to maintain control over it, and (3) knows of the illicit nature of the contraband. Hill v. State, 873 So. 2d 491, 493 (Fla. 1st DCA 2004). "When a vehicle is jointly occupied, a defendant's '[m]ere proximity to contraband is insufficient to establish constructive possession'" Hargrove v. State, 928 So. 2d 1254, 1256 (Fla. 2d DCA 2006). Drugs in open view provide evidence of knowledge of the drugs. Brown v. State, 428 So. 2d 250, 252 (Fla. 1983). Officer Morel's

testimony of his view of the marijuana and the container of cocaine in the console provides support that the Plaintiff had knowledge of the drugs. Further, knowledge and control may be established by incriminating statements and circumstances from which a lawful inference may be made. Jean v. State, 638 So. 2d 995, 996 (Fla. 4th DCA 1994). Evidence of flight is a circumstance in which a legitimate inference of guilt may be made. In State v. St. Jean, 658 So.2d 1056 (Fla. 5th DCA 1995), the defendants were the passenger and driver in a vehicle that was stopped and in which a bag of cocaine was found on the passenger floorboard. When the bag was searched, both defendants fled the scene. The State argued that both defendants had dominion and control over the cocaine. In reversing the trial court's granting motions to dismiss, the Fifth District Court of Appeal stated,

> Second, even if the c-4 motions properly raised the issue, the judge failed to give proper effect to the evidentiary value of the admitted flight. Our supreme court has long recognized:
>
> > The rule is that, when a suspected person in any manner endeavors to escape, or evade a threatened prosecution, by flight, concealment, resistance to a lawful arrest, or other ex post facto indication of a desire to evade prosecution, such fact may be shown in evidence as one of a series of circumstances from which guilt may be inferred. Whart. Crim. Ev. (9th ed.) § 750, and citations; Carr v. State, 45 Fla. 11, text 16, 34 So. 89) (quoting Blackwell v. State, 79 Fla. 709, 86 So. 224

(1920).

Daniels v. State, 108 So. 2d 755, 760 (Fla. 1959).

Also in Spinkellink v. State, 313 So. 2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S. Ct. 3227, 49 L. Ed. 2d 1221 (1976), rehearing denied, 429 U.S. 874, 97 S. Ct. 194, 50 L. Ed. 2d 157 (1976), the court stated the rule as "when a suspect endeavors to evade prosecution by flight, such fact may be shown in evidence as one of the circumstances from which guilt may be inferred." It is necessary, of course, that there be some evidence other than the flight to show that the fleeing was to avoid prosecution. Merritt v. State, 523 So. 2d 573 (Fla. 1988). Here, where the defendants fled just as the officer was opening the bag containing over two kilograms of cocaine (or, more to the point, containing minimum fifteen-year jail terms), it is hard to imagine any other motivation that would cause the owner (or the passenger for that matter) to abandon the vehicle along I-95 and take to the woods.

Id. at 1057 (underline supplied).

Here in this case, Officer Morel testified that the Petitioner attempted to walk away to call someone to pick him up and he had to bring the Petitioner back to the vehicle. He further testified that he had to go around the corner twice to get the Petitioner back to the scene and that the Petitioner attempted to leave the scene after being detained. The arrest report reflects that the Petitioner left the area and went around a corner and Officer Morel was able to catch up to him and place him into custody. Further, Officer Morel

testified that the Petitioner tried telling him he was not in the truck, despite Officer Morel's direct observation of the Petitioner sitting in the front passenger seat. What is apparent from this testimony is that the Petitioner was attempting to flee repeatedly, albeit, by walking away around a corner, but attempting to leave the scene nonetheless. From these circumstances, it is a legitimate inference of the Petitioner's guilt of the violations. While Petitioner testified that he only walked away to charge his phone and call for a ride, his hypothesis of innocence is not believable. For instance, he doesn't explain how he would be able to charge his phone in the street (or if he had a battery pack why he had to walk away from the scene). He likewise doesn't explain why he couldn't have charged his phone at the truck and therefore remained on the scene. Given the totality of the circumstances in this case where upon discovery of the drugs, and while the officers were involved in the crime scene, the Petitioner attempted to leave after being detained, his guilt and the constructive possession was properly inferred. As noted in State v. St. Jean, supra, it is hard to imagine any other motivation of the Petitioner, other than to avoid the consequences of his complicity, that compelled him to repeatedly attempt to leave. See also, Jacobs v. State, 742 So. 2d 333, 334 (Fla. 3rd DCA 1999) (Recognizing the significance of the defendant's flight in a constructive possession analysis after a jointly occupied vehicle he was driving was found to contain a firearm.). See also, Green v. State, 602 So. 2d 1306 (Fla. 4th DCA 1992) (When during a search of a jointly occupied vehicle, the police officer began to recover drugs from a bag, the Defendant blurted out that "that's not my stuff" creating a sufficient inference of knowledge to survive a motion for judgment of acquittal.).

Competent and substantial evidence supports the finding of the violations. The term competent and substantial evidence has been defined as follows:

Substantial evidence has been described as

14

such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. . . . In employing the adjective "competent" to modify the word "substantial," we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed. . . . We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the "substantial" evidence should also be "competent."

De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957) (citations omitted).

Here, from the relevant testimony of the officer as to his observations of the events and the totality of the circumstances in this case, it can be reasonably inferred that the Petitioner willfully and substantially violated his Conditional Release supervision as charged. Further, the finder of fact in this violation proceeding, clearly found that there was a willful and substantial violation of his Conditional Release. As stated in Manon v. State, 740 So.2d 1253 (Fla. 3rd DCA 1999),

It is well-settled that in order to revoke probation the state must establish by the greater weight of the evidence that there was a willful and substantial violation of a condition of probation. See Benavides v. State, 679 So. 2d 1195 (Fla. 3d DCA 1996).

15

Thus, it is implicit in every condition of probation that what is forbidden is a willful and substantial violation.

Id. at 1254-55.

Any claims by Petitioner over differences in testimony, or between reports and the hearing, and any difference between his version and the version of the supervising officer, are all credibility issues and determinations. As the trier-of-fact, it was the hearing examiner's function to determine the credibility of the witnesses and resolve any conflicts in the evidence. D.M.L. v. State, 773 So. 2d 1216, 1217 (Fla 3rd DCA 2000) (holding that it is well within the prerogative of the fact finder to determine the credibility of a witness); see also McKinney v. State, 624 So. 2d 373, 374 (Fla. 1st DCA 1993) (holding that "[i]t was the trial court's prerogative to accept the community control officer's testimony over that of appellant."). The weight and credibility of the evidence was for the hearing officer and not the reviewing court. Metropolitan Dade County v. Mingo, 339 So. 2d 302, 304 (Fla. 3rd DCA 1976). The reviewing court is not authorized to "reevaluate conflicts in the evidence to determine whether there is substantial competent evidence to support the decision of the lower tribunal . . .(s)uch action would amount to an improper granting of a trial de novo." Campbell v. Vetter, 392 So. 2d 6, 8 (Fla. 4th DCA 1981) (citations omitted). Fact-finding is solely within the province of lower tribunals, either administrative or judicial. Siegal v. Career Service Commission, 413 So. 2d 796 (Fla. 1st DCA 1982).

Based on the hearing examiner's findings of fact and determination of guilt, the Commission was not authorized to reject those findings that were supported by competent and substantial evidence, and properly revoked the Petitioner's conditional release. See Tedder v. Florida Parole Commission, 842 So. 2d 1022 (Fla. 1st DCA 2003). The record demonstrates that the hearing

> officer's factual findings were not devoid of competent
> and substantial evidence and that the findings of guilt
> and of willfulness and substantiality were supported in
> the record.

Resp. Ex. 4 at 181-87 (record citations omitted).

The trial court then summarily denied Petitioner's claims, finding as follows:

> The Court has reviewed the amended petition,
> response, all attached exhibits, and all other
> documents and motions, and is informed of the
> premises without the need for further briefing or
> hearing. The Florida Commission on Offender Review
> Summary of Final Violation Hearing demonstrates
> that Petitioner was found to have willfully violated a
> substantial condition of conditional release, and those
> findings were supported by competent, substantial
> evidence. Petitioner has not demonstrated facts
> sufficient to establish he is entitled to the relief of a writ
> of habeas corpus.

Resp. Ex. 6 (record citations omitted). Petitioner sought review of the trial court's decision by filing a petition for writ of certiorari with the First DCA. Resp. Ex. 7. And the First DCA per curiam denied the petition on the merits. Resp. Ex. 11.

As an initial matter, the Court notes that when briefing this issue in his state court filings with the trial court and the First DCA, Petitioner did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. Resp. Ex. 1, 7. Instead, Petitioner argued, in terms of state law only, that merely being in close proximity to the drugs and

17

paraphernalia in a jointly occupied vehicle did not establish constructive possession under sections 790.23(1), 893.149(1), Florida Statutes. Resp. Ex. 7 at 111. But challenges about issues of purely state law are not cognizable on federal habeas review. Beverly v. Jones, 854 F.2d 412, 416 (11th Cir. 1988). Indeed, the purpose of a federal habeas proceeding is to determine whether Petitioner's custody violates the Constitution or laws or treaties of the United States. Coleman v. Thompson, 501 U.S. 722 (1991). And only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir.1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). Thus, to the extent that Petitioner may be attempting to challenge issues of state law here, those claims are not properly before the Court on federal habeas review, and any federal constitutional claim is unexhausted and procedurally defaulted. Beverly, 854 F.2d at 416.

In any event, assuming the federal nature of these claims is exhausted and Petitioner's federal due process claim is properly before this Court, the First DCA's adjudication is entitled to deference. The United States Supreme Court has held that the revocation of conditional release implicates certain minimal

due process protections under the Fourteenth Amendment. See Morrissey v. Brewer, 408 U.S. 471 (1972) (holding that minimal due process protections are required during revocation of parole proceedings); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (incorporating for probation revocations the same Morrissey due process requirements used in parole revocations). These minimum requirements of due process include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board . . . ; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in any adversary criminal trial.

Morrissey, 408 U.S. at 489 (quotations omitted).

Also, consistent with Gagnon and Morrissey, the Eleventh Circuit has stated:

> A probationer charged with violating a term of his probation is not entitled to the same procedural protections afforded the accused in a criminal trial. See Gagnon, 411 U.S. at 782; Morrissey, 408 U.S. at 480. Because a "[p]robation revocation . . . is not a stage of a criminal prosecution," Gagnon, 411 U.S. at 782, a

19

probationer is afforded the minimum requirements of due process, which entitles him to disclosure of the evidence against him and a hearing at which he can present evidence and "confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)," Morrissey, 408 U.S. at 489. That hearing must be "structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior," id. at 484, and should involve a "process . . . flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial," id. at 489. See Gagnon, 411 U.S. at 783 n. 5, 93 ("[W]e emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes, including affidavits, depositions, and documentary evidence.").

Silimon v. Sec'y, Fla. Dep't of Corr., 554 F. App'x 838, 841 (11th Cir. 2014).[6]

Here, Petitioner was afforded the due process protections set forth in Morrissey. He was provided: a written notice of the claimed violations (Resp. Ex. 4 at 215-16); a copy of the evidence that would be used against him (Doc. 1 at 6); an opportunity to be heard in person, present evidence, and confront witnesses (Resp. Ex. 4 at 218); a neutral and detached hearing officer (id.); and a written statement of the evidence relied on and the reasons for revoking his

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

conditional release (id. at 232-33). Petitioner contends he was not provided Officer Morel's testimony prior to his revocation hearing but instead only received written statements by Officer Couch. Doc. 1 at 6-7. But the record shows that although Officer Couch prepared the arrest and booking report, Officer Couch described Officer Morel's participation in that report and the facts Officer Morel testified to were the same as those outlined in the evidence provided to Petitioner. See Resp. Ex. 2 at 135-37. Petitioner also alleges that his revocation hearing was rescheduled because Officer Couch "refused to testify." Doc. 1 at 6-7. But the record shows Petitioner requested to postpone the original date of the hearing until the disposition of the pending criminal charges. Resp. Ex. 4 at 211.

Also, the summary of the revocation hearing shows that competent substantial evidence existed to support the Commission's factual findings that Petitioner was guilty of the condition violations and that the violations were willful and substantial.[7] See Glumb v. Honsted, 891 F.2d 872, 873-74 (11th Cir. 1990) (stating the hearing summary provides an adequate record for review; "We know of no federal decision requiring a verbatim transcript of parole

---

[7] To the extent that Petitioner argues that the state's decision not to prosecute Petitioner for these alleged offenses shows he is actually innocent of the conditional release violations (Docs. 22, 28), that allegation lacks merit. See Jacques v. State, 95 So. 3d 419, 420 n.1 (Fla. 3rd DCA 2012) (stating that a new criminal offense can constitute a probation violation even if the state nolle prossed the charges).

revocation proceedings."). Thus, upon review of the record, this Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Grounds Four and Six are denied.

### b. Grounds One, Two, and Five

Petitioner argues that his due process rights were violated when, in its response to Petitioner's state habeas petition and petition for writ of certiorari, the Commission "was allowed to relitigate the evidentiary support [for] the revocation" and focus on evidence not mentioned in the order of revocation's "written statement of the evidence relied upon to support the revocation . . . ." Doc. 13 at 8. Specifically, Petitioner notes that in the order of revocation, the Commission included written statements of the evidence it relied on in finding Petitioner guilty of each violation; and in those written statements, the Commission explained that it only relied on evidence that Petitioner was within arm's reach of the illegal substances. Id. But, according to Petitioner, during his state habeas proceedings, the Commission argued, for the first time, "that there was evidence that [ ] Petitioner attempted to escape twice after being detained," and evidence of his attempted escape inferred Petitioner's knowledge and constructive possession of the illegal contraband. Doc. 1 at 10. He also argues

the state court's willingness to deny his state petitions based on this evidence of escape, that was not included in the revocation order, amounted to a denial of his due process rights. Id. at 13.

For purposes of this Order, the Court assumes the federal nature of these claims was exhausted in state court and is properly before this Court for federal habeas review. Nevertheless, Petitioner is still not entitled to relief.

Petitioner argues that the Commission's omission of language about Petitioner's attempt to escape from the order of revocation violates Morrissey's sixth due process requirement – a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. Doc. 20 at 8. In support of that argument, Petitioner relies on Tedder v. Florida Parole Commission, 842 So. 2d 1022 (Fla. 1st DCA 2003). Doc. 19 at 5. However, the facts of Tedder are distinguishable from the facts here. In Tedder, the Commission improperly reweighed evidence to reject the hearing officer's factual findings and recommendation that the petitioner's conditional release should not be revoked. See Tedder, 842 So. 2d at 1025-26. Here, there is no evidence that the Commission or the state court improperly reweighed the evidence presented at the revocation hearing to reject the hearing officer's factual findings. Instead, Petitioner simply challenges how the order revoking his conditional release did not mention Officer Morel's testimony that after the officers asked Petitioner to exit the vehicle, Petitioner made several attempts to leave the scene; and he

23

challenges the Commission's ability to rely heavily on that testimony in its responses to Petitioner's state court petitions attacking the revocation order. See Resp. Ex. 4 at 232.

But Petitioner cites no binding authority, and the Court is aware of none, mandating that an order of revocation be read in a vacuum, prohibiting the consideration of any other relevant evidence produced at the revocation hearing. Indeed, the Eleventh Circuit has held that literal written findings of fact are unnecessary to satisfy Morrissey's "written statement" requirement so long as the record compiled at the revocation hearing enables the reviewing court to determine the basis of the decision. See United States v. Copeland, 20 F.3d 412, 414 (11th Cir. 1994) (concluding that "oral findings, if recorded or transcribed, can satisfy the requirements of Morrissey when those findings create a record sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the evidence" relied on).

Here, the record compiled at the revocation hearing allowed the state court to conduct an adequate review. The written summary of the revocation hearing shows that Officer Morel testified that Petitioner tried to walk away from the scene twice, and Petitioner responded to that testimony by stating he walked away from the scene because "he was trying to charge his phone and call Uber for a ride." Resp. Ex. 4 at 220-21. Officer Morel also testified that he

saw Petitioner in the passenger seat of the vehicle and within arm's reach of the illicit items. Id. Thus, the record contained evidence of an attempted escape along with evidence that Petitioner was in close proximity to the drugs and drug paraphernalia. Petitioner has not shown a due process violation and Grounds One, Two, and Five are denied.

### c. Ground Three

Petitioner voluntarily dismissed his claim in Ground Three. See Doc. 21. Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition and Supplemental Petition (Docs. 1 and 13) are **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.[8]

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of February, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:      David Mincey, #522288
        Counsel of record

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

26